**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON CARTER,<br><br>Plaintiff,<br><br>vs.<br><br>STAAR SURGICAL COMPANY, ELIZABETH YEU, STEPHEN C. FARRELL, ARTHUR C. BUTCHER, WEI JIANG, LOUIS E. SILVERMAN, and LILIAN Y. ZHOU,<br><br>Defendants. | **Case No.:**<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Cameron Carter ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.  Plaintiff brings this stockholder action against STAAR Surgical Company ("STAAR" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

1. result of Defendants' efforts to sell the Company to Alcon Research, LLC ("Alcon") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an August 5, 2025, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, STAAR shareholders will receive $28.00 in cash for each share of STAAR they own. The transaction represents a total equity value of approximately $1.5 billion.

3. Thereafter, on August 29, 2025, the Company filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction (the "Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example, certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for STAAR, provided by STAAR management to the Company Board, and the Board's financial advisor, Citi Group Global Markets Inc. ("Citi"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Citi if any, and provided to the Company.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

**PARTIES**

7. Plaintiff is a citizen of Texas, and at all times relevant hereto, has been a STAAR stockholder.

8. Defendant STAAR, together with its subsidiaries, designs, develops, manufactures, and sells implantable lenses for the eye and accessory delivery systems to deliver the lenses into the eye. The Company is incorporated in Delaware and has its principal place of business at 25510 Commercentre Drive, Lake Forest, CA 92630. Shares of STAAR common stock are traded on the NASDAQ Capital Markets ("NASDAQ") under the symbol "STAA."

9. Defendant Elizabeth Yeu ("Yeu") has been chair of the Company Board at all relevant times.

10. Defendant Stephen C. Farrell ("Farrell") has been a director of the Company at all relevant times. In addition, Defendant Farrell serves as the Company's Chief Executive Officer ("CEO").

11. Defendant Arthur C. Butcher ("Butcher") has been a director of the Company at all relevant times.

12. Defendant Wei Jiang ("Jiang") has been a director of the Company at all relevant times.

13. Defendant Louis E. Silverman ("Silverman") has been a director of the Company at all relevant times.

14. Defendant Lilian Y. Zhou ("Zhou") has been a director of the Company at all relevant times.

15. Defendants identified in ¶¶ 9 - 14 are collectively referred to as the "Individual Defendants."

16. Non-Party Alcon researches, develops, manufactures, distributes, and sells eye care products worldwide. It operates through two segments, Surgical and Vision Care.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

20. Defendant STAAR, together with its subsidiaries, designs, develops, manufactures, and sells implantable lenses for the eye and accessory delivery systems to deliver the lenses into the eye. The company provides implantable Collamer lens product family (ICLs) and laser-based procedures, such as LASIK to treat visual disorders, such as myopia, hyperopia, astigmatism, and presbyopia. It serves its products to health care providers, including ophthalmic surgeons, vision and surgical centers, hospitals, government facilities, and distributors, as well as products are primarily used by ophthalmologists.

*The Flawed Sales Process*

21. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

22. The Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Alcon, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement.

23. Further, the Proxy Statement fails to adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

24. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

25. On August 5, 2025, STAAR and Alcon issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **GENEVA and LAKE FOREST, CA, Aug 5, 2025 –** Alcon (SIX/NYSE: ALC), the global leader in eye care dedicated to helping people see brilliantly, and STAAR Surgical Company (NASDAQ: STAA), the manufacturer of the Implantable Collamer® Lens (ICL), today announced the companies have entered into a definitive merger agreement through which Alcon intends to acquire STAAR. The acquisition includes the EVO family of lenses (EVO ICL™) for vision correction for patients with moderate to high myopia (nearsightedness), with or without astigmatism.
>
> Under the terms of the agreement, Alcon will purchase all outstanding shares of STAAR common stock for $28 per share in cash, which represents approximately a 59% premium to STAAR's 90-day Volume Weighted Average Price (VWAP) and a 51% premium to the closing price of STAAR common stock on August 4, 2025. The transaction represents a total equity value of approximately $1.5 billion.
>
> "With the number of high myopes rising globally, the acquisition of STAAR enhances our ability to offer a leading surgical vision correction solution for those who are not ideal candidates for other refractive surgeries such as LASIK," said David Endicott, CEO of Alcon. "This transaction will allow us to provide treatment options across the full spectrum of myopia—from contact lenses to surgical interventions—reinforcing our commitment to addressing the most significant needs in eye care."
>
> An estimated 50% of the world will be myopic by 2050 and today nearly 500 million people are considered high myopes.

With its innovative design, the EVO family of ICLs are implantable lenses that address a wide range of vision correction needs, including myopia with and without astigmatism, through a minimally invasive procedure that is reversible. The EVO family of ICLs are implanted between the iris (the colored part of the eye) and the natural crystalline lens during a procedure that does not remove corneal tissue.

"We believe the transaction with Alcon represents the best path forward and provides the greatest value for STAAR shareholders," said Stephen Farrell, CEO of STAAR. "As we've shared, fluctuating demand in China over the past two years has continued to create significant headwinds for STAAR as a standalone company. I'm proud of our team's efforts to address recent challenges, but there is more work to do. As a significantly larger company, Alcon has the capabilities and scale to accelerate EVO ICL adoption and bring our innovative technology to more surgeons and patients worldwide."

Dr. Elizabeth Yeu, Chair of the STAAR Board of Directors, said, "The STAAR Board is committed to maximizing value for shareholders. We have determined that this carefully negotiated transaction is in the best interest of STAAR shareholders as it delivers immediate and certain value at a significant premium, value that exceeds what we believe could be achieved under STAAR's standalone strategy."

The transaction is not subject to a financing condition. Alcon intends to finance the transaction through the issuance of short- and long-term credit facilities.

The transaction is anticipated to close in approximately six to 12 months, subject to customary closing conditions, including regulatory approval and approval by STAAR's shareholders. The transaction is expected to be accretive to earnings in year two.

*Potential Conflicts of Interest*

26. The breakdown of the benefits of the deal indicates that Company insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of STAAR.

27. Additionally, Company insiders currently own large illiquid amounts of Company Shares, Company Options, and Company RSUs, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff

and other public stockholders of the Company as follows:

| Name[1] | Shares of Common Stock Owned[2][4] (#) | Shares Subject to Options Exercisable on or Before October 24, 2025[3] (#) | RSUs Vesting on or Before October 24, 2025[3] (#) | Total (#) | Percent of Class[5] |
|---|---|---|---|---|---|
| Deborah Andrews | 8,586 | — | — | 8,586 | * |
| Arthur C. Butcher | 4,208 | 5,173 | — | 9,381 | * |
| Stephen C. Farrell | 35,156 | 43,335 | — | 78,491 | * |
| Wei Jiang | 25,571 | 4,010 | — | 29,581 | * |
| Louis E. Silverman | 475 | 2,440 | — | 2,915 | * |
| Elizabeth Yeu | 5,099 | 19,101 | — | 24,200 | * |
| Lilian Y. Zhou | 4,571 | 7,786 | — | 12,357 | * |
| Thomas G. Frinzi | 55,803 | — | — | 55,803 | * |
| Patrick F. Williams | — | — | — | — | * |
| Warren Foust | 19,311 | 41,855 | — | 61,166 | * |
| Magda Michna | 9,761 | 29,668 | — | 39,429 | * |
| Nathaniel Sisitsky | 10,804 | 32,621 | — | 43,425 | * |
| All current directors and executive officers as a group (10 individuals) | 123,542 | 185,989 | — | 309,531 | * |

| Name | RSUs ($) | PSUs ($) |
|---|---|---|
| **Named Executive Officers** | | |
| Stephen C. Farrell | 5,600,000 | 8,960,000 |
| Deborah Andrews | 1,172,276 | 1,875,597 |
| Warren Foust | 3,110,912 | 3,941,370 |
| Magda Michna, PhD | 1,955,128 | 2,364,858 |
| Nathaniel B. Sisitsky, Esq. | 2,213,820 | 2,364,858 |
| Thomas G. Frinzi | 819,532 | — |
| Patrick F. Williams | — | — |

28. Moreover, certain employment agreements with certain STAAR executives entitle such executives to severance packages, should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Tax Reimbursement ($)[4] | Total ($) |
|---|---|---|---|---|---|
| **Named Executive Officers** | | | | | |
| Stephen C. Farrell<br>  *Chief Executive Officer* | 2,175,000 | 14,560,000 | 118,257 | 6,839,000 | 23,692,257 |
| Deborah Andrews<br>  *Chief Financial Officer* | 945,518 | 3,047,873 | 51,253 | 1,385,000 | 5,429,644 |
| Warren Foust<br>  *President and Chief Operating Officer* | 1,295,014 | 7,052,282 | 76,644 | 3,045,000 | 11,468,940 |
| Magda Michna, PhD<br>  *Chief Development Officer* | 955,729 | 4,319,986 | 21,305 | 1,805,000 | 7,102,020 |
| Nathaniel B. Sisitsky, Esq.<br>  *Chief Legal Officer and Corporate Secretary* | 945,518 | 4,578,678 | 71,629 | 1,925,000 | 7,520,825 |
| Thomas G. Frinzi[5]<br>  *Former President and Chief Executive Officer* | — | 819,532 | — | — | 819,532 |
| Patrick F. Williams[5]<br>  *Former Chief Financial Officer* | — | — | — | — | — |

| Name | Base Salary Severance ($) | Target Bonus ($) | Earned Bonus ($) |
|---|---|---|---|
| **Named Executive Officers** | | | |
| Stephen C. Farrell | 1,450,000 | 725,000 | — |
| Deborah Andrews | 495,000 | 272,250 | 178,268 |
| Warren Foust | 600,000 | 420,000 | 275,014 |
| Magda Michna, PhD | 523,000 | 261,500 | 171,229 |
| Nathaniel B. Sisitsky, Esq. | 495,000 | 272,250 | 178,268 |
| Thomas G. Frinzi | — | — | — |
| Patrick F. Williams | — | — | — |

29.     The Proxy Statement fails to adequately all communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

30.     Thus, while the Proposed Transaction is not in the best interests of STAAR, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

31. The STAAR Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

32. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

    a. Whether the confidentiality agreements entered into by the Company with Alcon differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties; and

    b. Any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction.

*Omissions and/or Material Misrepresentations Concerning STAAR Financial Projections*

33. The Proxy Statement fails to provide material information concerning financial projections for STAAR provided by STAAR management to the Company Board and Citi and relied upon by Citi in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

34. Notably, the Proxy Statement reveals that as part of its analyses, Citi reviewed: "certain financial forecasts and other information and data relating to STAAR which were prepared and provided to or discussed with Citi by the management of STAAR."

35. The Proxy Statement should have, but fails to provide, certain information in the projections that STAAR management provided to the Company Board and Citi. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by

investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

36. With regard to the *Projections*, the Proxy Statement fails to disclose:

   a. Net Sales, including the inputs, metrics, and assumptions used to determine same;

   b. Adjusted EBITDA (unburdened by SBC), including the inputs, metrics, and assumptions used to determine same;

   c. Adjusted EBITDA Margin, including the inputs, metrics, and assumptions used to determine same;

   d. Adjusted EBITDA (burdened by SBC), including the inputs, metrics, and assumptions used to determine same; and

   e. Unlevered Free Cash Flow, including the inputs, metrics, and assumptions used to determine same.

37. With regard to the *July Diligence Projections*, the Proxy Statement fails to disclose:

   a. Net Sales, including the inputs, metrics, and assumptions used to determine same;

   b. Adjusted EBITDA (unburdened by SBC), including the inputs, metrics, and assumptions used to determine same; and

   c. Adjusted EBITDA Margin, including the inputs, metrics, and assumptions used to determine same.

38. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

39. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

40. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Citi' financial analyses, or make an informed decision whether to vote his shares in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citi*

41. In the Proxy Statement, Citi describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

42. With respect to the *Selected Public Companies Analysis*, the Proxy Statement fails to disclose:

   a. The Enterprise Value ("EV") for each of the selected public companies analyzed;

   b. The specific metrics observed for each of the selected public companies analyzed; and

   c. The inputs, metrics, and assumptions used to determine the illustrative EV / 2026E Revenue multiple reference range of 1.9x to 3.1x utilized.

43. With respect to the *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose:

   a. The EV for each of the target companies in each selected precedent transaction analyzed;

   b. The specific date on which each selected precedent transaction closed;

   c. The aggregate value of each selected precedent transactions analyzed;

   d. The specific metrics observed for each of the selected precedent transactions analyzed; and

   e. The inputs, metrics, and assumptions used to determine the illustrative EV / LTM Revenue multiple reference range of 3.1x to 6.3x utilized.

44. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

   a. The inputs, metrics, and assumptions used to determine the revenue exit multiples range of 2.5x to 6.5x;

   b. The inputs, metrics, and assumptions used to determine the discount rates of 13.4% to 14.6% utilized; and

   c. The Company's weighted average cost of capital utilized.

45. With respect to the *Discounted Equity Research Analyst Price Targets Analysis*, the Proxy Statement fails to disclose the following:

   a. The specific price targets analyzed; and

   b. The specific Wall Street firms that generated the analyzed price targets.

46. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

47. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and

related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public STAAR stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

48. Plaintiff repeats all previous allegations as if set forth in full herein.

49. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

50. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

51. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

52. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

53. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

54. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

55. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

56. Plaintiff repeats all previous allegations as if set forth in full herein.

57. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

58. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

59. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of STAAR's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

60. The Individual Defendants acted as controlling persons of STAAR within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause STAAR to engage in the wrongful conduct complained of herein. The Individual Defendants controlled STAAR and all of its employees. As alleged above, STAAR is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 5, 2025  **BRODSKY SMITH**

By: *Ryan P. Cardona*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Blvd., Ste. 300
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*